SIGNED THIS: September 12, 2013

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STEPHANIE ARLENE BROOKS, | ) | Case No. 12-82224 |
| | ) | |
| Debtor. | ) | |

**O P I N I O N**

Before the Court is the confirmation of the amended Chapter 13 plan filed by the Debtor, Stephanie Brooks (DEBTOR), and the objection by Michael D. Clark, Chapter 13 Trustee (TRUSTEE). At issue is how child support payments should be treated on Form 22C for purposes of calculating disposable income.

The DEBTOR, who is divorced with two young children, filed a Chapter 13 petition on October 4, 2012. Because the DEBTOR'S annualized current monthly income exceeds the applicable median family income for a household of three persons residing in the state of Illinois, she is an "above median" debtor, her applicable commitment period is 60 months and the Bankruptcy Code requires her to use the "means test" to calculate the "amounts reasonably necessary to be expended" for her family's maintenance or support.

Official Form 22C, the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, as subsequently amended by the DEBTOR, discloses current monthly income of $6,614.50, of which $6,214.50 is attributable to her employment as a nurse manager. In addition to her wages, the DEBTOR receives child support of $400 per month for her two children. The DEBTOR takes a deduction on Line 54 of Form 22C, for the full amount of child support which she receives, as reasonably necessary to be expended for her children's care. According to Line 59, the DEBTOR'S monthly disposable income is $111.46. However, the DEBTOR separately deducts an expense of $141 for day care, as an additional expense claim on Line 60, which directs the debtor to list and describe other expenses required for the health and welfare of the debtor and the debtor's family. Taking that final deduction into account, the DEBTOR is left with a negative disposable income.

On Schedule I, the DEBTOR reported her average monthly income as $4,340, including child support. Her monthly expenses, including $150 for day care, were reported on Schedule J as $4,252. According to those schedules, her monthly net income was $88. The amended Chapter 13 plan filed by the DEBTOR proposes to pay $100 per month for 60 months, for a total of $6,000. From that amount, the amended plan would pay off a mortgage arrearage to Busey Bank of $2,000.[1] The amended plan provides for the assumption of the lease on her vehicle. Unsecured creditors will receive no distribution.

---

[1] At prior hearings in this case, the DEBTOR referred to delinquent real estate taxes, which would need to be provided for by the plan. According to Schedule J, real estate taxes are not included in her mortgage payments, but are shown as a separate payment in the amount of $280. Although the DEBTOR had indicated that an amended Schedule D would be filed, that has not been done. The amended Form 22C, filed thereafter, did not include a secured claim for delinquent real estate taxes. Busey Bank, the mortgagee, has not filed a proof of claim. Presumably, if delinquent real estate taxes remain to be paid through the plan, the DEBTOR will provide for the claim in a second amended plan.

The TRUSTEE objected to confirmation of the amended plan, contending that the amended plan failed to apply all of the DEBTOR'S projected disposable income to the payment of unsecured creditors, as required by section 1325(b)(1)(B). The primary basis of the TRUSTEE'S objection is that by excluding the full amount of the child support that she receives, the DEBTOR is availing herself of double deductions, as most of those expenses are factored into the standard deductions for living expenses allowed elsewhere on Form 22 C. At the DEBTOR'S request, an evidentiary hearing was held on July 23, 2013. The DEBTOR was the only witness to testify. According to her testimony, the annual expenditures for her children total $10,055, or $838 per month.[2] Following the hearing, the parties filed briefs in support of their positions. In addition to the child support deduction, the TRUSTEE noted that he opposed the following additional deductions taken on amended Form 22C: Line 30 - the necessary tax expense should be limited to $1,316.94; Line 47(c) - the $90 insurance expense is duplicative as Line 47(b) already includes homeowners insurance; and Line 60 - the daycare expense, properly claimed on Line 35, should be limited to $110.17.

**ANALYSIS**

Section 1325(b)(1)(B) provides that if a trustee or unsecured creditor objects to confirmation of a chapter 13 plan, the court may not approve the plan unless, as of its effective date, the plan "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the

---

[2]That total consists of clothing expense of $2,500; toys for Christmas and birthdays of $1,600; school registration, supplies and pictures of $370; school activities of $110; latchkey (day care) expense of $2,460; lunches of $960; sports activities of $375; and additional transportation expense of $1,680.

3

plan." 11 U.S.C. § 1325(b)(1)(B). Section 1325(b)(2) defines "disposable income" in two parts. The first step focuses upon the income side of the equation and applies to all chapter 13 debtors.[3] Disposable income is preliminarily defined by reference to "current monthly income." "Current monthly income," as defined in section 101(10A), in addition to a debtor's earnings, includes amounts paid by third parties "on a regular basis for the household expenses of the debtor or the debtor's dependents." 11 U.S.C. § 101(10A)(B). Based on this broad definition, it has been held that child support payments are encompassed within "current monthly income." *In re Taborski*, 2013 WL 211116 (Bankr. W.D.Pa. 2013); *In re Wise*, 2011 WL 2133843 (Bankr.S.D.Ill. 2011). The inquiry does not end there, however. For purposes of chapter 13 only, disposable income is defined as "current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child)." 11 U.S.C. § 1325(b)(2).

The second part of the "disposable income" determination, addressing the expense component of the equation, provides for the deduction of amounts "reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor . . . ." 11 U.S.C. § 1325(b)(2)(A). While the expenses of a below median debtor are determined by the same standard which was employed prior to BAPCPA, the deduction of expenses for an above median debtor is to be determined by application of the chapter 7 formulaic "means test."

---

[3] For purposes of this case, "projected disposable income" will be the same as "disposable income," given the absence of anticipation of any change in the DEBTOR'S financial circumstances.

4

The issue before the Court is the interpretation and application of the parenthetical exclusion from disposable income of "child support payments . . . for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child" in section 1325(b)(2). The interpretation of a statute begins with the language of the statute. *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537 (7th Cir. 2003). If the language is plain, the only function of the court is "to enforce it according to its terms." *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The plain meaning of a statute is conclusive unless "literal application will produce a result demonstrably at odds with the intentions of its drafters." *Id.* The interpretation of a statute is guided not just by a single sentence or sentence fragment, but by the language of the whole law, and its object and policy. *Brach v. Amoco Oil Co.*, 677 F.2d 1213 (7th Cir. 1982).

Section 1325(b)(2)'s parenthetical excludes three types of payments: child support, foster care payments and disability payments for a dependent child. The exclusion is subject to two conditions: (1) the payments are made in accordance with applicable nonbankruptcy law; and (2) the payments are excludable only to the extent reasonably necessary to be expended for such child. Keeping in mind that the exclusion is made in the context of the "income side" of the calculation, the Court will briefly examine the nature and character of child support, the category of payments at issue here, before addressing the contentions of the parties.

Under section 505(a) of the Illinois Marriage and Dissolution of Marriage Act, the trial court may order either or both of the parents to pay child support in an amount that is "reasonable and necessary."  750 ILCS 5/505(a). The Act provides guidelines for

5

determining the minimum amount of child support. 750 ILCS 5/505(a)(1). A deviation from the guidelines may be made upon a determination that it would be appropriate after considering the best interest of the child in light of the evidence, including, but not limited to, the financial resources and needs of the child and both parents, the standard of living the child would have enjoyed had the marriage not been dissolved, and the physical, mental, emotional, and educational needs of the child. 750 ILCS 5/505(a)(2). The trial court is justified in making a downward departure from the guideline amount where the incomes of the parents are more than sufficient to provide for the reasonable needs of the children of the marriage. *In re Marriage of Hubbs*, 363 Ill.App.3d 696, 707, 843 N.E.2d 478 (Ill.App. 5 Dist. 2006). An award of child support is not meant to be a windfall to the custodial parent. *In re Keon C.*, 344 Ill.App.3d 1137, 1142, 800 N.E.2d 1257 (Ill.App. 4 Dist. 2003). It is equally true that a child is not required to subsist at a minimal level of comfort while the noncustodial parent is living a life of luxury. *In re Marriage of Bussey*, 108 Ill.2d 286, 297, 483 N.E. 2d 1229 (1985). Support is for the benefit of the child, not the parent or stepparent of the child, nor the step-siblings of the child. *In re Marriage of Edwards*, 369 Ill.App.3d 1035, 1039, 861 N.E.2d 1020 (Ill.App. 5 Dist. 2006).

Although it is only the exclusion for child support at issue here, the other exclusions provided by the statute, for foster care payments and disability payments, are similar in their purpose and are regarded as subject to the same restriction that the payments be expended for the child. In *Bryant v. Bryant*, 218 S.W.3d 565 (Mo.App. E.D. 2007), the court summarized the nature of foster care payments, stating:

> Foster care payments triggered by foster children's presence in a foster home are intended to provide economic benefits only for the foster children, but not the foster

6

> parent. *Wilkerson v. State, Dept. of Health and Social Services, Div. of Family and Youth Services*, 993 P.2d 1018, 1023 (Alaska 1999). Foster care payments received by a foster care parent per day, per child are received by the foster parent acting in a fiduciary capacity. *Paternity of M.L.B.*, 633 N.E.2d 1028, 2019 (Ind.Ct.App. 1994). These payments assist the foster parent in fulfilling his or her obligation to provide food, clothing, and shelter for foster children placed under his or her care. *Id*. Accordingly, a foster parent has a duty to spend money received per day, per child on behalf of the foster children, the money is plainly unavailable for the foster parent's own needs, and the money is not considered income available to the foster parent. *See Rios v. South Dakota Dept. of Social Services*, 420 N.W.2d 757, 762 (S.D. 1988).[4]

218 S.W.3d at 569. Similarly, social security disability payments to children replace wages that a parent would have earned but for the disability, substituting for support. *Graby v. Graby*, 87 N.Y.2d 605, 664 N.E. 2d 488 (1996). Like the first two exclusions, those disability payments belong to the child.[5] *Labrosciano v. Labrosciano*, 426 N.J.Super. 252, 43 A.3d 1260 (N.J. Super. Ch. 2011). Although a split of authority exists, many courts have held that child support payments are not property of the custodial parent's bankruptcy estate. *See In re Mehlhaff,* 491 B.R. 898, 904 n.32 (8th Cir.BAP 2013); *In re Poffenbarger,* 281 B.R. 379, 390 (Bankr.S.D.Ala. 2002)(collecting cases). With that backdrop, the Court turns to the arguments made by the parties in the present case.

The TRUSTEE contends that the DEBTOR, as an above median debtor, is not entitled to exclude any portion of the child support she receives, as being "reasonably necessary to be expended" for expenses incurred on behalf of the children which are otherwise included

---

[4] Section 675(4)(A) of the Adoption Assistance and Child Welfare Act of 1980, as amended, a federal funding statute establishing a program of payments to states for foster care and adoption assistance, which is a part of the Social Security Act, provides that "foster care maintenance payments" mean "payments to cover the cost of (and the cost of providing) food, clothes, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child and reasonable travel to the child's home for visitation." 42 U.S.C. § 670 et seq.

[5] The exclusion is not limited to social security disability payments, but is for "disability payments for a dependent child." This opinion does not speak to the parameters of that exclusion.

in the standardized expense component of the means test computation. The TRUSTEE believes that the parenthetical exclusion calls for an independent calculation to be made, on a case-by-case basis, with the Line 54 exclusion limited to additional, extraordinary expenses of the children which are reasonably necessary and have not otherwise been deducted on Form 22C. The TRUSTEE believes a case-by-case analysis is necessitated by the statute's "reasonably necessary" standard set forth in the parenthetical. According to the TRUSTEE, because the DEBTOR has included her two children in her claim of a household size of three, most, if not all, of the cost of the children's care and support cannot be separately considered in determining how much of the child support she receives is reasonably necessary for their care, because those amounts are separately accounted for under the National Standard for allowable living expenses, which includes food, apparel and services, personal care products and services and miscellaneous expenses.[6] In other words, in computing the income component of "disposable income," the TRUSTEE would jump ahead to the expense side of the equation, backing out from the amount of child support the DEBTOR receives, the deductions which are allowed by Form 22C.

The DEBTOR contends that the child support she receives of $200 for each child falls well below any threshold amount which might be questioned as reasonably necessary to meet the needs of a child. The DEBTOR maintains that it is appropriate for the Court to make this determination as a matter of law. According to the DEBTOR, that determination ends the inquiry. If the child support is reasonably necessary to be expended for the child's care, it is not included in disposable income. Alternatively, the

---

[6]The deduction taken by the DEBTOR on Form 22C for allowable living expenses is $1,227.

8

DEBTOR suggests that the Court should revert to Schedules I and J, with their detailed itemization of actual expenses, engaging in a painstaking analysis on a case-by-case basis.[7]

The TRUSTEE also argues that if Congress had intended to exclude the entire amount of child support income, it could have done so explicitly in section 101(10A)(B). Because the exclusion is set forth in chapter 13 of the Code, not in chapter 1, it is clear that the exclusion was intended to operate only in chapter 13 cases. It is also clear by its placement in section 1325(b)(2), not (b)(2)(A), that the parenthetical exclusion is intended to be applied as an exclusion from income rather than an expense adjustment as the TRUSTEE would apply it. In this Court's view, the flaw in the TRUSTEE'S interpretation results from regarding the parenthetical exclusion as creating an additional, separate computation, prematurely calling into play the expense side of the disposable income equation. Nothing in the language of the statute calls for such a calculation. Construing the parenthetical exclusion in conjunction with section 1325(b)(2) in its entirety, it becomes apparent that the TRUSTEE'S interpretation disrupts the formulaic approach prescribed by the statute. The means test was intended to establish a uniform, easily administrable, mechanical formula. Disposable income was intended to be determined as a "simple and straightforward matter of arithmetic." *In re Farrar-Johnson*, 353 B.R. 224, 232 (Bankr.N.D.Ill. 2006). This is especially true on the income side of the equation. As a practical matter, the TRUSTEE makes no suggestion as to how a child's fractional share of the standard

---

[7]The DEBTOR makes the suggestion that the Court could determine whether all of the child support is being used for the purposes of supporting the children by examining Schedules I and J. According to the DEBTOR, because she has very little money left over, the Court can conclude that all of the child support is being used for the care of the children. This Court rejects that approach. A "pooling" of the child support together with the income of the custodial parent and deducting the reasonable and necessary expenses of the family unit as a whole, may have the unintended consequence of committing some portion of the child support to pay off creditors of the custodial spouse, to the detriment of the child for whose benefit the support was paid.

9

deduction for allowable living expenses would be determined. The allocation would be no less problematic for below median debtors who are recipients of child support, because the exclusionary paragraph applies equally to them. The TRUSTEE'S interpretation would present difficult evidentiary issues.

The plain meaning of the parenthetical exclusion is better reflected by the DEBTOR'S interpretation, and is adopted by the Court. Under Illinois law, as set forth above, the benchmark for determination of child support is the reasonable and necessary needs of the child.[8] 750 ILCS § 5/505(a).[9] The reasonable necessity inquiry in section 1325(b)(2)'s parenthetical is, in effect, answered affirmatively by the Illinois divorce court's child support award, issued in accordance with Illinois law. Although the parties do not frame it as an issue of preclusion, when an Illinois divorce court issues a child support award, for the exclusive payment of the child's reasonable and necessary expenses, the court has necessarily determined that the full amount awarded is "reasonably necessary to be expended for such child."

Moreover, if the custodial parent's finances improve such that the entire amount of the child support award is no longer reasonably needed by the child, the ex-spouse payor has the right to seek reduction of the award. The custodial parent's creditors have no valid claim to the excess funds. This result is in harmony with the long-standing principle that domestic relations matters should properly be reserved to the state courts. *Simms v. Simms*,

---

[8] The Illinois Marriage and Dissolution of Marriage Act is modeled after the Uniform Marriage and Divorce Act. *See Kujawinski v. Kujawinski*, 71 Ill.2d 563, 376 N.E.2d 1382 (1978).

[9] The DEBTOR testified that the amount of the child support was determined by agreement with the children's father. The DEBTOR'S earnings are twice those of her former spouse, and the DEBTOR believed that $400 per month was all that he could afford. In all cases, the state court is not bound by agreements between the parents, but is required to approve the amount of the child support provided for. *In re Marriage of Ealy*, 269 Ill.App.3d 971, 647 N.E.2d 307 (Ill.App. 4 Dist. 1995).

175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115 (1899). Federal courts, in deference to the states' traditional authority over and particular expertise in domestic relations, are loath to intrude in matters of family law. *In re Taub*, 438 B.R. 39 (Bankr.E.D.N.Y. 2010).

Noting that a primary objective of the means test was to make "can-pay" debtors pay more, the TRUSTEE maintains that allowing debtors to fully exclude child support would result in a windfall to them, a result clearly not intended by the drafters of BAPCPA. That general policy, however, must defer to the specific exclusions from disposable income for child support, foster care and disability payments for a dependent child. Congress carved out an exclusion for payments received by debtors which must be dedicated for the support of the child for whom those payments are received. In crafting these narrowly targeted exclusions from a debtor's income, Congress intended to protect those funds for their dedicated purpose by removing them from the disposable income equation. To the extent that the income exclusions might enable some debtors to live a better lifestyle in chapter 13 than creditors might prefer, Congress likely weighed this as a lesser evil than depriving dependent children of the benefit of funds intended solely for their care, which is the risk that would be entailed by including the funds in the debtor's income or requiring the debtor to prove exactly how the child support funds are spent each month.

In this Court's view, the condition that the income exclusions are subject to a standard of reasonable necessity, is best interpreted as a hedge against the risk of abuse. There may be some few cases where the custodial parent is so well off that child support payments amount to unneeded surplus funds. In that event, the reasonable necessity standard provides a basis for including the payments in the debtor's income. That occurrence is likely to be rare. This case, where each child is receiving $200 per month from

11

their father, is a far cry from being an abusive situation where a debtor is unfairly taking advantage of the income exclusion for child support payments to the detriment of creditors.

In summary, allowing the debtor to exclude the full amount of child support in most cases is consistent with the intent of Congress as reflected in the statute. If the trustee or an objecting creditor can establish that all or part of such payments are truly excessive under the circumstances, the reasonable necessity standard provides a basis to deny all or part of the claimed exclusion. In light of the DEBTOR'S circumstances, a monthly child support payment of $400 for two children is not excessive. The DEBTOR'S deduction of the $400 in monthly child support taken on line 54 of Form 22C is allowable. The Court will address the TRUSTEE'S other objections at a subsequent hearing. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###